# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

| | |
|---|---|
| ASSIST WIRELESS, LLC, BOOMERANG WIRELESS, LLC D/B/A ENTOUCH WIRELESS, EASY TELEPHONE SERVICES COMPANY D/B/A EASY WIRELESS, I-WIRELESS LLC D/B/A ACCESS WIRELESS, <br><br>*Petitioners*, <br><br>v. <br><br>FEDERAL COMMUNICATIONS COMMISSION and THE UNITED STATES OF AMERICA, <br><br>*Respondents*. | Case No: 26-_____ <br><br> Agency WC Docket No. 11-42 <br><br> U.S. COURT OF APPEALS RECEIVED Jan 30, 2026 FIFTH CIRCUIT |

## PETITION FOR REVIEW

Pursuant to 5 U.S.C. § 706, 47 U.S.C. § 402(a), 28 U.S.C. §§ 2342(1) and 2344, and Federal Rule of Appellate Procedure 15(a), Assist Wireless, LLC, Boomerang Wireless, LLC d/b/a enTouch Wireless, Easy Telephone Services Company d/b/a Easy Wireless, and i-wireless LLC d/b/a Access Wireless (collectively, "Petitioners") hereby petition this Court for review of the order of the Federal Communications Commission ("FCC") captioned *In the Matter of Lifeline and Link Up Reform and Modernization*, Applications for Review of Order of the Wireline Competition Bureau by Assist Wireless, LLC, et al., WC Docket No. 11-

42, FCC-25-82 (rel. December 3, 2025) ("Order"). A copy of the Order is attached hereto as Exhibit A. This Petition is timely filed within 60 days after issuance of the Order. *See* 47 U.S.C. § 402(a) and 28 U.S.C. § 2344.

No court has yet addressed the validity of the Order. Jurisdiction and venue are proper under 47 U.S.C. § 402 and 28 U.S.C. §§ 2342 and 2343, because Petitioners are adversely affected by actions challengeable under 28 U.S.C. § 2342, and because both Assist Wireless LLC and Boomerang Wireless LLC d/b/a enTouch Wireless's principal offices are in Texas, and thus venue is proper in the Fifth Circuit Court of Appeals pursuant to 28 U.S.C. § 2343.

In the Order, the FCC denied four Applications for Review filed by Petitioners. Petitioners sought review of a Wireline Competition Bureau (the "Bureau") order denying their Requests for Review of decisions by the Universal Service Administrative Company (the "USAC") concerning the Bureau's Seventh COVID-19 Waiver Order.

The COVID-19 Orders released by the Bureau—seven in total—waived certain requirements for the "Lifeline" program, a program that provides support for communications services provided by eligible telecommunications carriers to qualifying low-income customers. Specifically, the orders temporarily waived the Lifeline non-usage requirements to ensure that Lifeline subscribers would not be involuntarily de-enrolled and to allow providers to still receive reimbursement for

non-using subscribers. In its Seventh COVID-19 Order, the Bureau declined to further extend the waiver of the non-usage rule "beyond May 1, 2021" and required cure notices to be sent "as of May 1, 2021," meaning the cure period did not begin until May 2, 2021. Petitioners interpreted the plain language of this order to extend the waiver through and including May 1, 2021. Accordingly, in April 2022, Petitioners submitted upward revisions to their April 2021 reimbursement claims to include subscribers for April 2021 that had not met the FCC's waived usage requirements. On May 24, 2022, USAC rejected Petitioners' upward revisions. USAC denied Petitioners' appeal on November 16, 2023, and the Bureau affirmed the USAC's decision on August 8, 2024. Petitioners then filed Applications for Review with the FCC.

Petitioners seek relief from the Order to the extent it affirms the denial of Petitioner's applications for upward revisions to their April 2021 reimbursement claims under the Lifeline program. As a result of these and other decisions implemented by the Order, Petitioners are aggrieved by the Order and have standing to challenge it.

Petitioners therefore seek review of the Order on the grounds that it is arbitrary and capricious, an abuse of discretion, in excess of the FCC's statutory authority, in contradiction to the FCC's prior interpretations of its own rules and orders, and without observance of procedure required by law within the meaning of

the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*; violates federal law, including, but not limited to, the Constitution, the Communications Act of 1934, as amended, and FCC regulations promulgated thereunder; and is otherwise contrary to law.

Accordingly, Petitioners respectfully request that this Court (1) grant the Petition and hold unlawful, vacate, and/or enjoin the Order, (2) remand to the FCC and/or the Bureau or USAC with instructions to provide reimbursement consistent with the Court's ruling and Petitioners' upward revisions, and (3) provide such additional relief as may be appropriate.

Respectfully submitted,

s/ Miles E. Coleman_____
Miles E. Coleman
*Counsel of Record*
miles.coleman@nelsonmullins.com
Abigail W. McCoy
Abigail.mccoy@nelsonmullins.com
NELSON MULLINS RILEY &
SCARBOROUGH
2 W. Washington Street Suite 400
Greenville, SC 29601
Telephone: (864) 373-2352

*Attorneys for Assist Wireless, LLC; Boomerang Wireless, LLC d/b/a enTouch Wireless; Easy Telephone Services Company d/b/a Easy Wireless; and i-wireless LLC d/b/a Access Wireless*

January 30, 2026

# CERTIFICATE OF SERVICE

I certify that on this date, the foregoing Petition for Review was electronically filed with the United States Court of Appeals for the Fifth Circuit using the CM/ECF system.

I further certify that I will timely email a copy of the date-stamped Petition to LitigationNotice@fcc.gov. See 47 C.F.R. § 1.13(a)(1).

I will also cause a copy of the date-stamped Petition to be sent via certified mail to:

U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

Secretary
Federal Communications Commission
Office of the Secretary
45 L Street NE
Washington, DC 20554

Respectfully submitted,

s/ Miles E. Coleman_____
Miles E. Coleman
*Counsel of Record*
miles.coleman@nelsonmullins.com
Abigail W. McCoy
Abigail.mccoy@nelsonmullins.com
NELSON MULLINS RILEY &
SCARBOROUGH
2 W. Washington Street Suite 400
Greenville, SC 29601
Telephone: (864) 373-2352

January 30, 2026

*Attorneys for Assist Wireless, LLC; Boomerang Wireless, LLC d/b/a enTouch Wireless; Easy Telephone Services Company d/b/a Easy Wireless; and i-wireless LLC d/b/a Access Wireless*

# EXHIBIT A

Before the
Federal Communications Commission
Washington, D.C. 20554

| | |
|---|---|
| In the Matter of ) | |
| ) | |
| Lifeline and Link Up Reform and Modernization ) | |
| ) | |
| Applications for Review of Order of the Wireline ) | |
| Competition Bureau by ) | |
| ) | |
| Assist Wireless, LLC, *et al.* ) | |
| ) | |
| Lifeline Universal Service Support Mechanism ) | WC Docket No. 11-42 |

**ORDER ON REVIEW**

**Adopted: November 24, 2025**                                                                 **Released: December 3, 2025**

By the Commission: Chairman Carr issuing a statement.

**I.     INTRODUCTION**

1.        Pursuant to section 5(c)(4) of the Communications Act of 1934, as amended, and section 1.115 of the Commission's rules,[1] the Federal Communications Commission (FCC or Commission) denies four Applications for Review[2] filed by Assist Wireless, LLC, Boomerang Wireless, LLC, Easy Telephone Services Company, and i-wireless, LLC (collectively, Applicants).  The Applicants seek review of a Wireline Competition Bureau (Bureau) order[3] denying the Applicants' Requests for Review[4] of decisions by the Universal Service Administrative Company (USAC) concerning the Bureau's *Seventh COVID-19 Waiver Order* pertaining to the application of certain Lifeline rules during the COVID-19 pandemic.[5]  USAC found that the Applicants submitted upward revisions to their April 2021 reimbursement requests for subscribers who were in their non-usage cure period on May 1, 2021 and thus

---

[1] 47 U.S.C. § 155(c)(4); 47 CFR § 1.115.

[2] Application for Review by Assist Wireless, LLC, WC Docket No. 11-42 (filed Sept. 9, 2024); Application for Review by Boomerang Wireless, LLC d/b/a enTouch Wireless, WC Docket No. 11-42 (filed Sept. 9, 2024); Application for Review by Easy Telephone Services Company d/b/a Easy Wireless of Order, WC Docket No. 11-42 (filed Sept. 9, 2024); Application for Review by i-wireless, LLC d/b/a Access Wireless, WC Docket No. 11-42 (filed Sept. 9, 2024) (collectively, Applications for Review).

[3] *Lifeline and Link Up Reform and Modernization Requests for Review of Decisions by the Universal Service Administrative Company by AmeriMex Communications Corp., et al.,* WC Docket No. 11-42, Order, 39 FCC Rcd 8795 (WCB 2024) (*Denial Order*).

[4] Request for Review by AmeriMex Communications Corp. d/b/a SafetyNet Wireless, WC Docket No. 11-42 (filed Jan. 12, 2024); Request for Review by Assist Wireless, LLC, WC Docket No. 11-42 (filed Jan. 12, 2024); Request for Review by Boomerang Wireless, LLC d/b/a enTouch Wireless, WC Docket No. 11-42 (filed Jan. 12, 2024); Request for Review by Easy Telephone Services Company d/b/a Easy Wireless, WC Docket No. 11-42 (filed Jan. 12, 2024); Request for Review by Global Connection Inc. of America d/b/a StandUp Wireless, WC Docket No. 11-42 (filed Jan. 12, 2024); Request for Review by i-wireless, LLC d/b/a Access Wireless, WC Docket No. 11-42 (filed Jan. 12, 2024) (collectively, Requests for Review and the requesting parties are referred to herein as Petitioners).

[5] *Lifeline and Link Up Reform and Modernization*, WC Docket No. 11-42, Order, 36 FCC Rcd 4448 (WCB 2021) (*Seventh COVID-19 Waiver Order*).

were not eligible to be claimed for Applicants' April 2021 data month.[6] The Bureau affirmed USAC's decision and denied Applicants' Requests for Review.[7] We conclude the Bureau correctly denied Applicants' Requests for Review and thus we deny Applicants' Applications for Review.

## II. BACKGROUND

2. The Lifeline program provides support for communications services provided by eligible telecommunications carriers (ETCs) to qualifying low-income customers.[8] An ETC may only receive support for the number of actual qualifying low-income customers it serves.[9] ETCs "must implement policies and procedures for ensuring that their Lifeline subscribers are eligible to receive Lifeline services."[10] Under sections 54.405 and 54.407 of the Commission's rules, ETCs may claim Lifeline support for Lifeline subscribers who do not pay a monthly end-user fee for their service only if the subscriber has recently used the service.[11] Section 54.405(e) of the rules requires that when a subscriber who does not pay a monthly end-user fee fails to use their Lifeline service for 30 consecutive days, the ETC must provide the subscriber with a notice period of 15 days to cure their non-usage by using the service or else be de-enrolled.[12] ETCs may not claim Lifeline support for subscribers who are in the 15-day cure period as of the Lifeline snapshot date[13] and have not cured their non-usage as of that date.[14]

3. In March 2020, the Bureau released the first in a series of orders waiving certain Lifeline requirements during the COVID-19 pandemic.[15] On March 30, 2020, in its second COVID-19 waiver

---

[6] Requests for Review at 1, 5, 7. Petitioners' Requests for Review were largely identical and so citations are the same across all requests for purposes of this Order on Review. For the purposes of this Order on Review, the Commission did not identify any material differences between the Requests for Review.

[7] *Denial Order*, 39 FCC Rcd at 8797-8800, paras. 6-11.

[8] *See* 47 U.S.C. § 254(b)(1), (3); 47 CFR § 54.401.

[9] 47 CFR § 54.407(a) ("Universal Service support for providing Lifeline shall be provided directly to an eligible telecommunications carrier based on the number of actual qualifying low-income customers listed in the National Lifeline Accountability Database that the eligible telecommunications carrier serves directly as of the first of the month.").

[10] *Id.* § 54.410(a).

[11] *See id.* §§ 54.405(e)(3), 54.407(c)(2).

[12] *See id.* § 54.405(e)(3).

[13] Lifeline reimbursements are based on the number of actual qualifying low-income customers being served by an ETC on the "snapshot date" for that month—a report taken on the first of the month that shows the ETC's subscriber count for the prior month as reflected in the National Lifeline Accountability Database (NLAD) subscriber data. *See Wireline Competition Bureau Provides Guidance on the Lifeline Reimbursement Payment Process Based on NLAD Data*, WC Docket No. 11-42, Public Notice, 33 FCC Rcd 128, 128 (WCB 2018); 47 CFR § 54.407(a).

[14] *See Bridging the Digital Divide for Low-Income Consumers et al.*, WC Docket No. 17-287 et al., Fifth Report and Order, Memorandum Opinion and Order and Order on Reconsideration, and Further Notice of Proposed Rulemaking, 34 FCC Rcd 10886, 10937–38, paras. 119–20 (*2019 Lifeline Reform Order*) (explaining that the non-usage "rules do[] not confer any right for the ETC to receive reimbursement during the 15-day cure period," so "ETCs will not be eligible to be reimbursed for those subscribers who are in a 15-day non-usage cure period regardless of whether the subscriber's 15-day cure period includes the snapshot date"); *Nat'l Lifeline Ass'n v. Fed. Commc'ns Comm'n*, 983 F.3d 498, 510 (D.C. Cir. 2020) ("Prepaid Lifeline subscribers in non-usage cure periods as of a snapshot date have neither 'used the service within the last 30 days' nor 'cured their non-usage.' Thus, the natural and best reading of section 54.407(c)(2) is that ETCs may not receive support payments for such subscribers.").

[15] *See, e.g.*, *Lifeline and Link Up Reform and Modernization*, WC Docket No. 11-42, Order, 35 FCC Rcd 2729 (WCB 2020) (waiving certain Lifeline requirements in an effort to avoid service disruption and address the

(continued….)

order, the Bureau temporarily waived the Lifeline non-usage requirements to ensure that no Lifeline subscribers were involuntarily de-enrolled.[16]  In its *Seventh COVID-19 Waiver Order*, released on February 24, 2021, the Bureau declined to further extend the waiver of the non-usage rule because nearly a year had passed after the initial waiver and the likelihood that the service was not actually being used increased as time went on, a concern also raised by various states.[17]  However, to provide an orderly restart of the non-usage notice process to subscribers, the order extended the waiver for a short period through April 30, 2021, and required ETCs to send cure notices to subscribers who, as of May 1, 2021, had not used their service in the previous 30-days.[18]

4.        In April 2022, Petitioners submitted upward revisions to their April 2021 reimbursement claims to include subscribers who Applicants assert were in the final day of their permitted non-usage period on May 1, 2021, and thus were properly included in their April 2021 claims even though the subscribers did not cure their non-usage during a subsequent cure period.[19]  On May 24, 2022, USAC rejected Petitioners' upward revisions.[20]  On July 25, 2022, Petitioners requested that USAC review its rejections.[21]  On November 16, 2023, USAC denied Petitioners' appeal.[22]  On January 12, 2024, Petitioners filed their Requests for Review of USAC's decision with the Bureau.

5.        On August 8, 2024, the Bureau issued an order denying the Requests for Review and affirming USAC's decision to deny Petitioners' request for upward revisions of their April 2021 reimbursements.[23]  On September 9, 2024, four of the original six Petitioners—i.e., Applicants—challenged the Bureau's decision by filing Applications for Review with the Commission.[24]

## III.    DISCUSSION

6.        Applicants' requests for upward revisions of their April 2021 reimbursements aim to extend a temporary waiver of Lifeline usage for consumers by only one or two days in order to obtain a whole extra month of reimbursement for providers.  The Applicants' interpretation of the *Seventh COVID-19 Waiver Order* would hinder the Commission from its obligation to prevent waste in the Lifeline program.[25]  We deny Applicants' Applications for Review of the *Denial Order*, affirm the *Denial Order*, and conclude that the Bureau, acting under delegated authority, properly denied Applicants' Requests for Review.

---
(Continued from previous page)
importance of access to affordable communications services for low-income households during the COVID-19 pandemic).

[16] *Lifeline and Link Up Reform and Modernization*, WC Docket No. 11-42, Order, 35 FCC Rcd 2950, 2950–52, paras. 2, 6–8 (WCB 2020).

[17] *Seventh COVID-19 Waiver Order,* 36 FCC Rcd at 4451, para. 9.  Whereas the *Seventh COVID-19 Waiver Order* allowed the waiver of certain rules to continue for longer (e.g., recertification and documentation requirements), *id.* at 4449, para. 3, the Bureau specifically declined to further extend the waiver of non-usage requirements.  *Id.* at 4451, para. 9.

[18] *Id.* at 4451, para. 10.

[19] Requests for Review at 5.

[20] *Id.* at 1 & n.8.

[21] *Id.* at 6.

[22] *Id.* at 1.

[23] *Denial Order*, 39 FCC Rcd at 8797-8800, paras. 6–11.

[24] *See generally* Applications for Review.  AmeriMex Communications Corp. and Global Connection Inc. of America did not file applications for review.

[25] *See, e.g.*, *2019 Lifeline Reform Order* , 34 FCC Rcd at 10895, paras. 17–18 (describing the purpose of the Lifeline usage and related rules as reducing fraud, abuse, and wasteful spending in the Lifeline program).

7.	The *Seventh COVID-19 Waiver Order* indicated that the waiver ended on April 30, and not the May 1 date that the Applicants hold out as the end of the waiver period.[26] The *Seventh COVID-19 Waiver Order* stated that "we extend the waiver and require ETCs to send cure notices to subscribers who, as of May 1, 2021, have not used their service in the previous 30-days."[27] The "previous 30-days" before May 1, 2021 are April 1 through April 30. Therefore, the expiration of the waiver period is April 30. Moreover, the *Seventh COVID-19 Waiver Order* requires that "at the expiration of the waiver period [i.e., April 30], ETCs must send notice to subscribers" that they have the next 15 days (i.e., May 1 through May 15) to cure their non-usage.[28] Even assuming *arguendo* that the *Seventh COVID-19 Waiver Order* was genuinely ambiguous—which it is not, based on its "text, structure, history, and purpose"— the Commission finds that its interpretation of its own regulations are entitled to *Auer* deference.[29] The clear, affirmative statement of when the waiver period ended and cure notices were to be sent (i.e., April 30) is found in paragraph 10 of the *Seventh COVID-19 Waiver Order*, and no other statements in that order contradict this interpretation that the end of the waiver was to be on the last day of the month of April 2021.[30] This interpretation of the *Seventh COVID-19 Waiver Order* is consistent with: (1) prior COVID-19 waiver orders; (2) the Commission's requirement to provide customers with only 45 days to establish usage, rather than the 46 or more that Applicants seek; (3) the Commission's time calculation rules; and, (4) the goal of re-establishing usage rules promptly, given concerns that many subscribers were not actually using their Lifeline service as the waiver period lingered.[31] In light of these facts and analyses, the Commission's interpretation is reasonable and should not come as an "unfair surprise" to Applicants.[32]

8.	Applicants argue that this interpretation of the affirmative statement in paragraph 10 of the *Seventh COVID-19 Waiver Order*—"requir[ing] ETCs to send cure notices to subscribers who, as of May 1, 2021, have not used their service in the previous 30-days"—is at odds with the Bureau's negative statement in the first paragraph that "we *decline* to further extend the existing waiver of the Commission's Lifeline usage requirement beyond May 1, 2021."[33] However, this negative statement in the first paragraph about what the Bureau was *not* doing (i.e., extending the waiver beyond May 1) does not conflict with the clear and affirmative statement of what the Bureau *was* doing—requiring ETCs to send cure notices at the end of the "previous 30-days" of non-usage before May 1, which in this case would be April 30.[34] Likewise, the Bureau's negative statement in paragraph 9—"[w]e next *decline* to extend the

---

[26] Applications for Review at 13–18 & n.62.

[27] *Seventh COVID-19 Waiver Order*, 36 FCC Rcd at 4451, para. 10.

[28] *Id.*

[29] *See Kisor v. Wilkie*, 588 U.S. 558, 575–79 (2019) (explaining courts must defer to an agency's interpretation of its own regulation where, as here, the interpretation is reasonable, it is the "official position" of the agency, it falls within the scope of its authority, and it is the result of "fair and considered judgment").

[30] *See Seventh COVID-19 Waiver Order*, 36 FCC Rcd at 4451, para. 10.

[31] *See infra* paras. 7–11.

[32] *See Kisor*, 588 U.S. at 576, 579.

[33] Applications for Review at 12, 14–16 (citing *Seventh COVID-19 Waiver Order*, 36 FCC Rcd at 4448, 4451, paras. 1, 10) (emphasis added).

[34] *Seventh COVID-19 Waiver Order*, 36 FCC Rcd at 4448, 4451, paras. 1, 10. We reject Applicants' argument that the *2016* and *2019 Lifeline Orders* support their interpretation. *See* Applications for Review at 15–16. Those orders make clear that notice should be sent "on the 30th day" of non-usage and the non-usage cure period is the "subsequent 15 days" after the cure notice is sent. *Lifeline and Link Up Reform and Modernization et al.*, WC Docket No. 11-42 et al., Third Report and Order, Further Report and Order, and Order on Reconsideration, 31 FCC Rcd 3962, 4115, para. 415 (2016) **(***2016 Lifeline Order***)** ("Under this scheme, Lifeline service providers must notify subscribers of possible termination on the 30th day and terminate service if, during the subsequent 15 days, the subscriber has not used the service."); *2019 Lifeline Order*, 34 FCC Rcd at 10936, para. 116 ("Per this change, ETCs

(continued….)

previous waiver of the Commission's non-usage rule for the Lifeline program by four months"[35]—did not conflict with the affirmative statement (to send cure notices on April 30) in paragraph 10.[36] The *Seventh COVID-19 Waiver Order*, in considering how far to extend the duration of the waiver, "decline[d] to further extend [it] . . . beyond May 1"[37] and "decline[d] to extend [it] . . . by four months"[38]; instead, it terminated the waiver on April 30, 2021, as stated dispositively in paragraph 10.[39]

9.      Applicants also argue that the waiver extended through May 1 because they "could not send a cure notice on April 30 when the subscriber had at least through the end of the day on April 30 (even under the Bureau's interpretation) to use the service to avoid the need for a cure notice."[40] We disagree.  First, the *Seventh COVID-19 Waiver Order* and the Commission's rules all require that ETCs must notify subscribers of possible de-enrollment "*on* the 30th day" of non-usage [41]—i.e., in the absence of a more specific rule, any time *on* the 30th day of non-usage (here, April 30, 2021) is sufficient.  Nothing in the *Seventh COVID-19 Waiver Order* or the Commission's rules requires that, as Applicants claim, ETCs give subscribers "at least through the end of the day" on the 30th day of non-usage before sending cure notices because of the off chance that a subscriber uses their service at 11:59 pm that day.[42]  Under Applicants' interpretation, ETCs would have to perfectly time their notices down to the millisecond:  sending notices at 11:59 pm and 59 seconds on the 30th day of non-usage (i.e., April 30) would be too early and 12:00 am on the following day (i.e., May 1) would be too late.  The cure notice rule has never required such granular exactness; again, it simply requires ETCs to notify subscribers of

---

(Continued from previous page)
must notify subscribers of possible de-enrollment on the 30th day of non-usage and de-enroll the subscriber if, during the subsequent 15 days, the subscriber has not used the service.").  In this case, the cure notice should have been sent on April 30, at the end of the waiver period, and thus, consistent with the *2016 and 2019 Orders*, the cure period ran from May 1 through May 15.

[35] *Seventh COVID-19 Waiver Order*, 36 FCC Rcd at 4451, para. 9.

[36] *Id.* at 4451, para. 10.  Notably, Applicants do not argue that the *Seventh COVID-19 Waiver Order* extended the waiver by four months.

[37] *Id.* at 4451, para. 1.

[38] *Id.* at 4451, para. 9.

[39] *Id.* at 4451, para. 10.  Contrary to Applicants' claim, there is nothing inconsistent between these interpretations of paragraphs 1 and 10 (or 9, for that matter), and so the Commission does not address Applicants' contention that "[d]rafting errors that lead to inconsistencies such as these should be construed against the drafter."  Applications for Review at 17.  Applicants also argue that previous COVID-19 waiver orders "had set the waivers to expire as of the end of a month," that the language of the *Seventh COVID-19 Waiver Order* was different from previous orders, and because "a change in language must have some meaning," it follows that the *Seventh COVID-19 Waiver Order* could not have been intended to expire at the end of the month.  Applications for Review at 14 & n.52.  Applicants' argument is self-defeating.  Prior COVID-19 waiver orders made an affirmative statement that the waiver extended "*through* [the end of the month]," meaning the end of the waiver included the last day of the month.  *See, e.g.*, *Lifeline and Link Up Reform and Modernization*, WC Docket No. 11-42, Order, 35 FCC Rcd 12954, 12954, para. 1 (WCB 2020) (emphasis added).  However, Applicants' focus on the characterizations of the waiver's end in the *Seventh COVID-19 Waiver Order*—the use of a negative statement that the waiver was *not* extended *beyond* May 1 rather than what would have been a more typical affirmative statement that the waiver *was* extended *through* a date certain, such as April 30, actually cuts against Applicants' implicit argument that "through May 1" should be treated the same as "beyond May 1."  Extending the non-usage waiver through the first of the month (rather than the end of the month) would be inconsistent with all of the other COVID-19 usage waivers and result in an unintended windfall for service providers, as discussed herein.  *See infra* para. 11 & n.56.

[40] Applications for Review at 17.

[41] *2016 Lifeline Order*, 31 FCC Rcd at 4115, para. 415 (emphasis added); *2019 Lifeline Reform Order*, 34 FCC Rcd at 10936, para. 116 (emphasis added).

[42] Applications for Review at 15 n.54, 17.

possible de-enrollment on the 30th day of non-usage.  Second, Applicants' suggestion that an ETC cannot know whether subscribers "as of May 1, 2021, have not used their service in the previous 30-days" until May 1 commits a similar error.[43]  Neither the *Seventh COVID-19 Waiver Order* nor the Commission's rules require that an ETC know for certain that a subscriber has not used their service by waiting until the very end of the day on the 30th day of non-usage.  The *Seventh COVID-19 Waiver Order* merely requires that an ETC determine that there have been 30 consecutive days (i.e., April 1, April 2, . . . April 30) during which the subscriber has not used their service.  ETCs were permitted to send the notice any time "*on* the 30th day of non-usage"[44] and must not wait until May 1 to send the notice.  Contrary to the Applicants' assertion, sending a cure *notice* on the 30th day of non-usage does not deprive subscribers of "the full time provided under the waiver to use their Lifeline service and the full cure period to avoid being unnecessarily de-enrolled from Lifeline."[45]  This is because the *notice* merely informs the subscriber they have 15 more days to use their service before de-enrollment; the notice does not *de-enroll* the subscriber.  If the subscriber uses their service later on the same day the notice is sent (or any time in the next 15 days), the subscriber will avoid de-enrollment.

10. We also reject Applicants' arguments that the Commission's computation of time rules in sections 1.4(c) and 1.4(d) support their interpretation.  First, Applicants correctly quote section 1.4(c) of the Commission's rules as stating that "the first day to be counted when a period of time begins with the occurrence of an act, event or default is the day after the day on which the act, event or default occurs" and identify the sending of the cure notice as such an event; however, Applicants then incorrectly assume the cure notice should be sent on May 2, and so incorrectly find that the first day to be counted in the cure period is May 3.[46]  As discussed above, ETCs were required to send non-usage cure notices on April 30 (not May 2), so under section 1.4(c) the 15-day non-usage cure period started the next day, on May 1 (not May 3) and ran through May 15 (not May 17).[47]  Second, Applicants correctly quote section 1.4(d) of the Commission's rules as stating "when computing a period of time the last day of such period of time is included in the computation, and any action required must be taken on or before that day" and identify the last day of the period to be the end of the waiver period.[48]  However, Applicants not only incorrectly assume the "last day" of the waiver period is May 1 (rather than April 30), but also incorrectly claim the cure notice must be sent the *next day* on May 2 (rather than on April 30), contrary to section 1.4(d)'s requirement that "any action required must be taken on or before th[e last] day."[49]  Here, both the ending of the waiver period *and* the sending of cure notices are "required actions" and they must both be taken

---

[43] *Id.* at 16 (quoting *Seventh COVID-19 Waiver Order*, 36 FCC Rcd at 4451, para. 10) (internal quotation marks omitted).

[44] *2019 Lifeline Reform Order*, 34 FCC Rcd at 10936, para. 116 (emphasis added).

[45] Applications for Review at iv, 9, 21.

[46] Applications for Review at 17 (quoting 47 CFR § 1.4(c)) (internal quotation marks omitted).

[47] Moreover, Applicants approach runs afoul of the *2016* and *2019 Lifeline Orders'* requirement that "the subscriber will have a total of *45* days in which to demonstrate 'usage.'" *2016 Lifeline Order*, 31 FCC Rcd at 4115, para. 415 (emphasis added) (internal quotation marks omitted); s*ee also* Applications for Review at 15–16 (noting the *2019 Lifeline Order* provides for a total of 45 days to demonstrate usage—30 days of initial non-usage, followed by 15 days to cure non-usage).  Specifically, Applicants imply they should provide customers with a 30-day non-usage period (April 2 through May 1), followed by a day to send a cure notice (May 2), followed by a 15-day cure period (May 3 through May 17), totaling *46* days.  Applications for Review at 17.  Notably, Applicants do not contest the Bureau's finding that Applicants' approach impermissibly gives subscribers over 45 days to demonstrate usage.  *See Denial Order*, 39 FCC Rcd at 8798, para. 8.

[48] Applications for Review at 18 (quoting 47 CFR § 1.4(d)) (internal quotation marks omitted).

[49] 47 CFR § 1.4(d).

on the same day.[50] In sum, because Applicants apply the Commission's time computation rules based on incorrect assumptions for when the relevant time periods started and ended, Applicants' resulting computations are also incorrect and do not disturb the *Denial Order's* conclusions.[51]

11. Finally, Applicants also argue that the Bureau erred in rejecting their public interest arguments in support of Applicants' preferred interpretation. We disagree. First, Applicants argue that the Bureau improperly rejected its unsupported allegations that unnamed ETCs received unspecified amounts of reimbursement that were consistent with Applicants' preferred interpretation of the *Seventh COVID-19 Waiver Order*.[52] The Bureau correctly rejected Applicants' contention because Applicants failed to even attempt to meet their "burden of production and the burden of proof (by a preponderance of the evidence)" to show that such ETCs exist and were unfairly compensated.[53] Further, the Commission would enforce its interpretation of the *Seventh COVID-19 Waiver Order* in any similar known instance of non-compliance by another ETC. Second, as already discussed, Applicants are incorrect that sending a non-usage cure notice on the last day of the waiver period deprives subscribers of their full time to cure non-usage[54]—sending notice on the 30th day of non-usage is required by the rules and still provides subscribers 15 more days to cure before de-enrollment is required.[55] Third, Applicants argue the Bureau's rejection of their request for reimbursement is unfair and unjust because the "FCC mandated that discounted Lifeline service be made available to all eligible subscribers, regardless of whether the waived rules were complied with during the period ending on May 1."[56] But, as already discussed, this argument is a continuation of the Applicants' erroneous belief that the end date of the waiver period was May 1 and as a result, they should be reimbursed for the month of May 2021. Fourth, providing an additional day for the waiver that results in an additional month of reimbursements would be detrimental to program integrity. The *Seventh COVID-19 Waiver Order* specifically declined to "issue a waiver extending the total non-usage period [another] 30 days" (to include the month of May), citing State and provider concerns that the service was going unused and because the Bureau found "such an extension after an almost year-long waiver of the rule will only result in further disbursements being used to support a service that no one is using."[57] The purpose of the usage waiver was to ensure "access to essential

---

[50] *See Seventh COVID-19 Waiver Order*, 36 FCC Rcd at 4451, para. 10 (ending the waiver period on April 30, the 30th day of non-usage before May 1, and requiring cure notices also be sent at that time); *2019 Lifeline Order*, 34 FCC Rcd at 10936, para. 116 (notice most be sent "on 30th day" of non-usage); *2016 Lifeline Order*, 31 FCC Rcd at 4115, para. 415 (same).

[51] Applicants challenge the Bureau's finding that section 1.4(d) was "'inapposite because the waiver is not stating when a period of time is ending, it is stating when a new one is beginning.'" Applications for Review at 18 (quoting *Denial Order*, 39 FCC Rcd at 8799, para. 9). Regardless, when section 1.4(d) is correctly applied, it is consistent with the conclusions of the *Denial Order*—i.e., that April 30 was the last day of the waiver period and ETCs must send cure notices, as applicable, on that day. *Denial Order*, 39 FCC Rcd at 8797–8798, paras. 7–8.

[52] Applications for Review at 12–13, 19–20.

[53] *Fed.-State Joint Bd. on Universal Serv. Changes to the Bd. of Directors of the Nat'l Exch. Carrier Ass'n, Inc. Universal Serv. Contribution Methodology et al.*, WC Docket No. 06-122, Order, 32 FCC Rcd 2140, 2150, para. 30 (2017); *see also Universal Serv. Contribution Methodology*, WC Docket No. 06-122, Order on Reconsideration, 29 FCC Rcd 9715, 9719–20, para. 12 & n.35 (2014) ("Under Commission precedent, the preponderance of the evidence standard requires that the proponent demonstrate that it is more likely than not that its position is correct.") (internal citations omitted).

[54] Applications for Review at iv, 9, 21.

[55] *See 2019 Lifeline Reform Order*, 34 FCC Rcd at 10936, para. 116. Applicants have not argued that any of the revised reimbursements they seek are for customers who cured their non-usage within the 15-day cure period.

[56] Applications for Review at 20-22.

[57] *Seventh COVID-19 Waiver Order*, 36 FCC Rcd at 4451, para. 9.

communications services" for a temporary period during the COVID 19 pandemic[58] (rather than to ensure payments to ETCs for unused services). It would be unreasonable to interpret the order as refusing to ensure customer access for an additional 30 days (for the month of May) but extending the waiver just long enough to cover the May 1 snapshot date and provide ETCs with an extra month of reimbursements for services the order stated were likely going unused.[59]

12. For the foregoing reasons, we therefore deny Applicants' Applications for Review and affirm the Bureau's decisions in the *Denial Order*.

## IV. ORDERING CLAUSES

13. ACCORDINGLY, IT IS ORDERED, pursuant to sections 4(i) and 5(c) of the Communications Act of 1934, as amended, 47 U.S.C. §§ 154(i), 155(c), and section 1.115 of the Commission's rules, 47 CFR § 1.115, that the Applications for Review filed by Assist Wireless, LLC, Boomerang Wireless, LLC, Easy Telephone Services Company, and i-wireless, LLC on September 9, 2024, ARE DENIED.

FEDERAL COMMUNICATIONS COMMISSION



Marlene H. Dortch
Secretary

---

[58] Applications for Review at 20.

[59] Applicants' interpretation of the *Seventh COVID-19 Waiver Order* would extend access for a customer not using the service by only *one or two days longer* than the Bureau's interpretation, while at the same time providing Applicants with a *full extra month* of reimbursements for services the Bureau was concerned were largely going unused. *Seventh COVID-19 Waiver Order*, 36 FCC Rcd at 4451, para. 9. For example, under Applicants' interpretation (as opposed to the Bureau's), a customer who had not used Lifeline for nearly an entire year would be de-enrolled on May 16 or 17 (rather than May 15), but Applicants would receive reimbursement as though they were providing services to the customer through all of May (rather than only through all of April).

# STATEMENT OF
# CHAIRMAN BRENDAN CARR

Re:	*Lifeline and Link Up Reform and Modernization; Applications for Review of Order of the Wireline Competition Bureau by Assist Wireless, LLC, et al.; Lifeline Universal Service Support Mechanism*, WC Docket No. 11-42, Order on Review (Dec. 3, 2025).

Today's decision protects the Lifeline program from abuse by refusing to extend a COVID-era waiver that would allow Lifeline providers to obtain additional federal subsidies for services that their subscribers were not using.

The American people fund the Lifeline program, and the Commission has a duty to safeguard those funds.  One way we protect the Lifeline program from waste, fraud, and abuse is through the non-usage rule, which requires providers to de-enroll subscribers who are not using their Lifeline service.  When COVID-19 hit in 2020, the Commission temporarily waived the Lifeline non-usage rule to make sure that no one was involuntarily de-enrolled.

That temporary waiver ended on April 30, 2021.  Soon after, a handful of carriers participating in Lifeline petitioned the Commission, arguing the waiver actually expired on May 1, 2021.  This may seem like a small distinction—it's just one day—until you consider that extending the waiver by one day would entitle these carriers to an additional month of reimbursements.  Put differently, these providers are seeking millions of dollars in additional support, at the American public's expense, for services that no one was using.

This is a clear attempt to exploit the flexibility the Commission provided during the pendency of the COVID-19 pandemic after the need for leniency had passed.  With today's action, we stop this attempt to game the system and receive extra reimbursement.  I thank the FCC staff for their work on this item.